1                 IN THE UNITED STATES DISTRICT COURT

2                    FOR THE DISTRICT OF WYOMING
    ------------------------------------------------------------
3
    UNITED STATES OF AMERICA,
4
             Plaintiff,                    DOCKET NO. 12-CR-216-F
5
             vs.                           CHEYENNE, WYOMING
6                                          April 29, 2013
    AJAY JARIWALA,                         9:00 a.m.
7
             Defendant.
8
    ------------------------------------------------------------
9
                    TRANSCRIPT OF HEARING PROCEEDINGS
10                        ALL PENDING MOTIONS

11            BEFORE THE HONORABLE NANCY D. FREUDENTHAL
                 CHIEF UNITED STATES DISTRICT JUDGE
12
    APPEARANCES:
13  For the Plaintiff:        JAMES C. ANDERSON
                              L. ROBERT MURRAY
14                            Assistant United States Attorney
                              UNITED STATES ATTORNEY'S OFFICE
15                            2120 Capitol Avenue
                              P.O. Box 668
16                            Cheyenne, WY  82003-0668

17  For the Defendant:        HARVEY A. STEINBERG
                              MATTHEW R. GIACOMINI
18                            ARIEL BENJAMIN
                              SPRINGER & STEINBERG, PC
19                            1600 Broadway, Suite 1200
                              Denver, CO  80202
20

21  Court Reporter:           MRS. JANET DAVIS, RMR, FCRR
                              United States Court Reporter
22                            2120 Capitol Avenue, Room 2228
                              Cheyenne, Wyoming  82001
23                            (307) 635-3884
    Proceedings recorded by mechanical stenography, transcript
24  produced with computer.

25

1                          I N D E X

2

3    <u>MOTIONS</u>                                          <u>PAGE</u>

4    MOTION TO SUPPRESS
          Mr. Steinberg                             3
5          Mr. Anderson                              4
          Ruling                                   17
6
     MOTION FOR DISCLOSURE
7          Mr. Steinberg                             5
          Ruling                                   16
8
     MOTION TO CONTINUE
9          Mr. Steinberg                             5
          Mr. Anderson                              8
10          Mr. Steinberg                            13
          Ruling                                   17
11
     MOTION AS TO CONFIDENTIAL INFORMANTS
12          Ruling                                   17

13   MOTION RE COCONSPIRATOR STATEMENTS/BRUTON
          Mr. Anderson                             20
14          Ruling                                   20

15

16

17

18

19

20

21

22

23

24

25

1    (Proceedings commenced 9:00 a.m., April 29, 2013.)

2         THE CLERK:  In criminal matter Case

3    No. 12-CR-216-2-F, United States of America versus Ajay

4    Jariwala, set today for a motion hearing.

5         Counsel, please state your appearances.

6         MR. ANDERSON:  Jim Anderson and Bob Murray on behalf

7    of the United States.  Also seated at counsel table is Paul

8    Claflin, Special Agent with ATF, and we will be designating him

9    our case agent for purposes of Rule 615.

10        THE COURT:  Good morning.

11        MR. STEINBERG:  Morning, Judge.  My name is Harvey

12   Steinberg.  I appear with and on behalf of the Defendant Ajay

13   Jariwala who is present in court standing right now.  And also

14   present at counsel table standing to my right is Mr. Ariel

15   Benjamin and Mr. Matt Giacomini, both lawyers from my office.

16        THE COURT:  As announced by the courtroom deputy, we

17   have various motions filed by the defendant.

18        Mr. Steinberg, how would you like to proceed?  I don't

19   know if you wish to argue some or all of the motions, if you

20   wanted to split time with your colleagues, but I will leave

21   that to you.

22        MR. STEINBERG:  Perhaps I could help facilitate

23   resolution of most of the motions that are time consuming.

24   One, the defense had filed motions to suppress statements.  It

25   is our position based on review of the videotapes as well as

1    the audiotapes that we will withdraw that motion.

2         We had also filed a motion to suppress fruits of a

3    search warrant dealing with search of cell phone that was taken

4    from the defendant at the time of his arrest.  The Government

5    has indicated that they don't intend to introduce any of the

6    fruits that -- of that search during the course and scope of

7    their case in chief, and therefore, that motion, I believe, is

8    moot.

9         THE COURT:  Is that correct?

10        MR. ANDERSON:  That's correct, Your Honor, the United

11   States, as we indicated in our response to the Court, found

12   little of evidentiary value on the cell phone.  I have

13   represented to defense counsel that, trials being what they

14   are, I can't foresee the future.  I don't anticipate using any

15   of that information off the cell phone during our case in

16   chief.  We are continuing to analyze it.  Should something come

17   up, I will certainly notify the defense, but at this point we

18   don't anticipate using any of that material off the phone

19   during our case in chief.

20        And I can't anticipate what might happen during

21   cross-examination of any defense witness, but at this point we

22   think that Mr. Steinberg -- what Mr. Steinberg has represented

23   is substantially correct.

24        THE COURT:  All right.  Thank you, Mr. Anderson.

25        MR. ANDERSON:  It is correct.

1           MR. STEINBERG:  Judge, we had filed a motion for

2    disclosure of confidential informant, but I don't think there

3    will be anything that will come of that.  I don't think the

4    Government intends to call that person, or if they do, then

5    there's no issue as well.

6           THE COURT:  All right.  So do you consider that mooted

7    or withdrawn, Mr. Steinberg?

8           MR. STEINBERG:  Mooted.

9           THE COURT:  All right.  Thank you.

10           MR. STEINBERG:  And now if I might approach the

11    lectern.

12           THE COURT:  Please do.

13           MR. STEINBERG:  Judge, still pending is the motion to

14    continue.  And I had advised counsel that -- we had filed a

15    document in support of our motion to continue and we had done

16    that under seal.  I had advised him prior to the filing of that

17    document that we intended to do that, and he was gracious

18    enough to say he did not object, and I confirmed with him today

19    that we had done that.

20           I am in an uncomfortable position and I will tell you

21    why.  I have been doing this perhaps a lot longer than I should

22    and maybe that's part of the problem.  I can honestly say in

23    the 35 years plus of my practice I have never tried a case

24    where I haven't read every bit of discovery.  I think every

25    defendant charged with a crime, especially a situation where

12-CR-216-F                    MOTION FOR DISCLOSURE

1    he's looking at the type of mandatory sentence that this

2    defendant is looking at, he is entitled to, pursuant to his

3    Sixth Amendment rights, not only zealous but prepared counsel.

4         And there is no way I could have sifted through, let

5    alone digested, I'm guessing close to 70,000 pages of discovery

6    as well as multiple hours of videotapes and audiotapes in the

7    time frame that we have had those.  I think that we received

8    the bulk of discovery I want to say on or about February 19th,

9    Counsel correct me, and then there's been other discovery

10   that's come in during the course of preparations.

11        And there's just no way any lawyer, any lawyer, and I

12   want to say that clearly, could have adequately prepared this

13   case in the short time frame.  There's no way.  I was doing

14   math the other day, and I think that if we did 240 pages a day,

15   which is difficult reading in terms of whenever you're reading

16   discovery for the first time, it is more difficult than if you

17   read it the second or third times, and most lawyers like to at

18   least go through discovery several times because the first time

19   you try to get an overview and the second time you look at it

20   with a more, if you will -- I hate to use this term --

21   jaundiced eye in terms of preparation.  There's no way anyone

22   could have done it in the short time frame.

23        And that assumes one doesn't have other commitments.

24   And I would suggest to you if I didn't have other commitments I

25   probably wouldn't have been the right choice of counsel for

1   this type of case.  This is a complicated case in terms of the

2   origin of the fire from our perspective.  There's investigation

3   that needs to be done, and there's overall preparation.

4           I don't want you to think that the defense has been

5   dilatory in its efforts.  Because of the impending trial that

6   was set, we jumped on this immediately, and we have dedicated,

7   perhaps to the detriment of other clients, amounts of time to

8   try to prepare for this.  And I am simply not ready.  And

9   again, I'm going to reiterate this:  I have never been in this

10  situation where I had to tell the Court that I am not prepared

11  for a trial.  But I want the record to be clear, if this

12  proceeds to trial on May 13th, I am of the humble opinion that

13  it will be a sham and farce from the defense's side because the

14  defendant will be represented by counsel who did not have

15  adequate time to prepare, not through lack of effort by

16  counsel, but simply the constraints of the time frame that was

17  placed upon counsel and this defense team.

18          And I understand there are competing interests, Judge,

19  and I don't mean to suggest there aren't competing interests.

20  And I know that this Court and the public has an interest in

21  making sure that cases, if you will, are tried in an

22  expeditious fashion.  But I think the Constitution trumps, and

23  the Sixth Amendment to this Constitution that we live under

24  guarantees a defendant have effective counsel, and, at the

25  minimum, effective counsel is defined as prepared counsel.

1          And as I said, I cannot be prepared and no lawyer, no

2     lawyer who is facing this kind of situation -- excuse me --

3     this kind of trial, could be adequately prepared under the

4     circumstances.

5          I have nothing further.

6          THE COURT:  Thank you.

7          Mr. Anderson.

8          MR. ANDERSON:  Briefly in response, Your Honor, the

9     discovery in this matter is voluminous.  There's a lot of it.

10    I think at last count there was about 40 to 45 gigabytes,

11    perhaps a little more, of discovery.  But a lot of that, Judge,

12    when you start talking about digital size, that really is quite

13    meaningless, because, for instance, your typical jpeg file,

14    photograph, takes up an awful lot of space.  To say there's 80

15    or 70,000 pages of documents is really misleading as well.

16         I am not accusing Mr. Steinberg of trying to mislead

17    the Court, but I think that when you talk about 70 or 80,000

18    pages, many of those pages will be scanned pages of bankruptcy

19    pleadings in New Jersey that have absolutely nothing to do with

20    this case at all.

21         The essence of this case is contained in the 500-plus

22    pages of the ATF report that was provided to the defense on

23    February -- as Mr. Steinberg says, was received by the defense,

24    shipped out of our office on February 15th and received on

25    February 19th.

1            In addition to that, all of those 70 or 80,000 pages

2    are not text documents.  They are scanned, canceled checks.

3    They are photographs.  They are transcripts, double-spaced

4    transcripts.  Quite frankly, Judge, Mr. Murray came onto this

5    case about six weeks ago and, again, not having the same

6    responsibilities and obligations as defense counsel, and we

7    understand that, but certainly will be prepared and ready to go

8    to trial.  We're certainly ready to go to trial.  We have

9    submitted our response to the motions to continue.

10            I'm at a disadvantage, obviously, at this point not

11   understanding or not knowing what's recently been submitted to

12   the Court, but we stand by our previous submittals.  We believe

13   that this is a case that at its essence is about a man who

14   hired another man to burn down a building.  Origin and cause is

15   not complicated.  We have a man that's going to come into this

16   courtroom and testify:  I had gasoline.  I poured the gasoline.

17   I lit the gasoline.

18            The ATF reports back up that testimony.  The ATF

19   scientific reports which are very short, very simple say debris

20   taken from certain areas within the -- from the fire in fact

21   tested positive for gasoline confirming the testimony of the

22   arsonist.

23            Again, origin and cause is not the issue here.  The

24   issue here is whether or not a jury will believe Mr. Robert

25   Rodriguez when he testifies.  That's the -- that's the kernel

1    and the essence of this particular case is the individual who

2    says he was hired by Mr. Jariwala going to be believable to the

3    jury.

4            So with that in mind, Judge, I think that we should be

5    going forward.  This is a case -- there is no mystery to the

6    defense two years ago when Mr. Steinberg was first retained

7    that this was an arson investigation.  Mr. Jariwala knows that

8    he was the subject of suspicion from early on.  Mr. Jariwala

9    has been sued by the insurance company saying, "We are not

10   going to pay for the claim that you and your business

11   associates have submitted in regards to this fire."

12           So to say that we're unprepared I think really misses

13   the mark.  And again, the 60,000, 70,000, 80,000 pages of

14   discovery in this matter, as the Government has repeatedly

15   submitted to the Court in its responses, the essence of this

16   case is in the ATF report that consists of about 500-plus

17   pages.

18           It is the road map and the guide to this case.  And

19   certainly, while I can well understand defense -- the defense's

20   desire to review all of the documents, a great many of those

21   documents that were submitted that were gathered in the course

22   of this investigation simply will not be used.  We intend, Your

23   Honor, to give by the beginning of next week to defense counsel

24   our witness list.  We have already provided a witness list in

25   this particular matter.  We provided that on February 15th of

1   2013.

2           We're going to whittle that witness list down to about

3   25 witnesses.  We will also provide to defense prior to trial

4   next week sometime, as soon as we have finalized it, our

5   exhibit list.  We want to be as -- as defense friendly as we

6   can in providing -- in trying this case as far as giving the

7   defense what we believe they need or that they will need from

8   us in regards to this particular case.

9           I would be happy to answer any question that the Court

10  might have.

11          THE COURT:  All right.  Thank you.

12          MR. STEINBERG:  May I briefly reply, Judge?

13          THE COURT:  I have a couple of questions first.

14          MR. STEINBERG:  I'm sorry.

15          THE COURT:  Thank you.  In dealing with the U.S.

16  Attorney's office in this district as frequently in drug cases

17  where there's much more evidence than in this case, the U.S.

18  Attorney's Office has in some instances identified, as you have

19  today, the focus of the Government's case in terms of what you

20  think to be inculpatory evidence, the 500 pages that provides

21  the overview and road map and the report by the ATF.

22          What other efforts has the U.S. Attorney done or

23  anticipates doing to target both inculpatory and exculpatory

24  evidence that's in the voluminous discovery that's been

25  provided?

 1          MR. ANDERSON:  Early on, probably within the first

 2     week of -- after the arraignment in this particular matter, I

 3     think it was either on Friday or a Saturday, we had lengthy

 4     discussion, probably an hour discussion with the defense,

 5     specifically with Mr. Giacomini, outlining our case and what we

 6     believed were the significant pieces of evidence and the

 7     significant documents within the discovery that we have

 8     provided to the defense that particular attention ought be paid

 9     attention to.

10          We have really literally withheld nothing.  If

11     anything, I think the Government could be faulted here.  The

12     only reason that we could be faulted is perhaps we have

13     provided too much.  But again, rather than be accused of

14     withholding anything that might be -- that might be in our

15     possession, we tried to turn over everything we possibly can.

16          Now, we have not -- I have not identified anything,

17     Your Honor, within the evidence that has been turned over to

18     the defense anything that I would consider to be Brady material

19     indicating someone else has committed this crime other than

20     early on in the investigation several notations were made about

21     other possible suspects.  Those reports have, indeed -- they

22     are part of the ATF packet that's been turned over to the

23     defense.

24          So I guess what I'm -- a lengthy response to your

25     simple question is we have tried to discuss with the defense

12-CR-216-F                    MOTION FOR DISCLOSURE

1    those portions of the evidence that have been turned over to

2    them that we believe are important and significant.  We have

3    certainly not -- while we haven't said this is an exculpatory

4    piece of evidence, the reason we haven't done that is because

5    we don't believe much of what we've turned over qualifies -- in

6    fact, we don't believe anything qualifies as Brady material at

7    this point, Judge.

8              THE COURT:  Thank you.

9              MR. ANDERSON:  Anything else, Judge?

10             THE COURT:  No, unless there's something that you wish

11   to say.

12             MR. ANDERSON:  No, Judge.

13             THE COURT:  Mr. Steinberg.

14             MR. STEINBERG:  Judge, first I think it was important

15   for you to know I was never involved in any of the civil cases,

16   never appeared, never advised anyone and was not part and

17   parcel of anything that happened in the civil case.

18             Two, this is just an example.  The Government

19   obviously has a different view -- and I don't expect them to

20   have the same view as the defense because that's not their

21   role.

22             But I anticipate that the Government at the time of

23   trial will make, if you will, a big to-do, to use a term of

24   art, about the amount of insurance that was on this premises.

25   And if you would just limit yourself to the 500 pages that the

1   Government says we should limit ourselves to, that becomes a

2   big deal and you say to yourself, my goodness, why was there

3   this much insurance on this property.

4          But if you take the time to read the discovery, you

5   come across gems like this, which was an investigation done as

6   part of this by the New York office.  And I don't know if the

7   Court's aware of this, but there was an Assistant U.S. Attorney

8   by the name of Sarah Coyne, C-O-Y-N-E, out of the Eastern

9   District of New York who issued subpoenas.

10         And lo and behold, prior to Mr. Jariwala's involvement

11  or knowledge of this property, there was a $12 million

12  insurance policy that was taken out to the benefit of Fidelity

13  Bank of Florida and that appears, based on this document, to be

14  in about 2009.  And the period, according to this document, of

15  coverage is December 21st, 2009 through March 21st, 2010.  As

16  you know, the fire allegedly occurred in September of 2010.

17         The document goes on to say the coverage totals over

18  12 million.  The contact information for the NIA Group, which

19  is the insurer, is in Somerset, New Jersey, and then it has the

20  Fidelity Bank of Florida.

21         Well, this to me is important material because it

22  seems to belie the suggestion that the defendant went out and

23  got this overwhelming insurance policy in anticipation of

24  burning it down when, in fact, prior to his participation in

25  this particular purchase there was a $12 million insurance

1   policy already in place which I had no idea about until we came

2   across this document.  And this is the kind of gem, if you

3   will, that's important.

4          So now we have to figure out how to get subpoenas out

5   to NIA Group in New Jersey so we can get copies.  And then it

6   appears that the entity that took out the insurance policy was

7   CJM.  Now, that will come up in the trial because they're going

8   to suggest CJM was the defendant's alter ego and that he was

9   CJM.  Well, now we know he wasn't CJM, because CJM before his

10  involvement took out a policy for $12 million.  Now, I can't

11  get ready for the case because of things like this.

12         And when the Government says they're going to be,

13  quote, defense friendly, that's the tempest in the teapot.  And

14  what I mean by that is the fact that -- I don't want their

15  friendship.  They're nice people, but I'm not here to be their

16  friend.  I'm here to represent and defend my client without the

17  friendship of the Government.  This is a system that is geared

18  towards not this kind of, quote, friendship where the defense

19  has to rely on the very people who are trying to lock him up

20  for 15-plus years.  And we're supposed to look to them for

21  guidance?  I don't think so.

22         And this is just one example, Judge.  And how many

23  others are there that we might be able to come up with?  The

24  Government, of course, just wants to limit this and say here's

25  this case; just focus on this.  And the defense says well, wait

1    a second.  It is more than that.  And it is important to know

2    the history.

3          So this is but one example that we've come across.

4    And that's my concern.  If you force me to go to trial, I will

5    not be prepared and I will not be effective.  And someone will

6    determine, who is much brighter than me, if, in fact, this was

7    a fair trial.  Thank you.

8          THE COURT:  Thank you.  Anything further?

9          MR. STEINBERG:  No.

10         THE COURT:  Anything further?

11         MR. ANDERSON:  Government has nothing further.

12   Thanks, Judge.

13         THE COURT:  Thank you.

14         Well, just on some housekeeping matters before we move

15   to what we have spent the lion's share of the time this morning

16   addressing, there are a number of motions that are associated

17   with disclosure which are within the Court's order governing

18   this trial.  We haven't addressed those.  We have addressed

19   three motions and then the motion to continue.

20         But insofar as the defendant has motions pending

21   relating to the release or disclosure of information or

22   materials that are already addressed and provided for within

23   the Court's order, discovery order on this case, those motions

24   will be granted in part and denied in part.

25         It will be granted to the extent that those materials

1    have been produced or that they're required to be produced

2    pursuant to the Court's discovery order.  And to the extent the

3    motion is seeking relief in excess of what's -- what the

4    Court's provided in the discovery order, those motions are

5    denied.

6            On the motion to suppress statements, that motion for

7    the defendant's comments is withdrawn.

8            On the motion to suppress the fruits of the search

9    warrant, that motion at this time is considered moot.  If

10   during the course of trial something surfaces, the Court will

11   address it at that time.

12           Relating to the motion as to the confidential

13   informant, the identity of informants, the Court again

14   considers that motion mooted.

15           Turning now to the motion to continue, the Court

16   understands that that motion is sought under the ends of

17   justice provision in the Speedy Trial Act.  It's -- it's the

18   Court's conclusion that -- well, the test and the requirement

19   is reasonable time for effective preparation.  This case has

20   been subject to one continuance already.  The Court is not of

21   the opinion that effective counsel requires counsel to read

22   every bit of discovery.  If that were the test -- there are

23   many, many cases in this district and other districts which

24   entail the disclosure of vast amounts of data characterized as

25   gigabytes or whatever.  If this is -- if this is the standard,

1    then no case would go to trial within the Speedy Trial Act or

2    close to the Speedy Trial Act, and that's not the Court's view

3    of what Congress intended when they passed that law and

4    afforded specific rights to the defendant as well as to the

5    public on the Speedy Trial.

6         I read through the ex parte motion and conclude that

7    even considering the ex parte motion and the disclosure of

8    information which can be characterized as strategic that

9    particularly as to efforts to retain experts there's really no

10   clear indication in that motion and the other prior motion

11   before the ex parte motion was filed that those experts would

12   actually assist the defendant's case.

13        It's -- it's the Court's decision to deny the second

14   motion for reconsideration of the original motion to continue.

15   The Court is of the conclusion that the time that has elapsed,

16   both following the defense -- defendant's indictment and

17   arraignment and preceding that that there's been reasonable

18   time for effective preparation in this case.  Again, we see

19   drug cases, white-collar crime cases, child pornography cases

20   with vast amounts of evidence disclosed by the Government.

21        I have never had a defense attorney make any

22   representation that they need to read every bit of discovery.

23   It is the Court's view that the defendant -- the Government has

24   provided, both through meetings and otherwise, the outline of

25   its case.  The defendant has an understanding of his

1   relationship to this case, the insurance policies and the

2   accusations and evidence relating to that.

3        This case from my perspective is a case where the

4   Government really is called to prove beyond a reasonable doubt

5   who, what, when, where and how.  Juries certainly are

6   interested in the why component which appears to be the search

7   through the documents that the defense is engaged in at this

8   time.

9        And so with that, the case will stay on track.  I

10  would note, and this was covered in the first, if not the

11  second, order relating to defense request to continue, that at

12  the time of the detention hearing I was unambiguously clear

13  that this case was moving to trial and that it would not be

14  unnecessarily delayed.  We've got two defendants on this

15  indictment that are waiting in jail -- in a jail setting where

16  very little is available to them.  They have -- it is

17  reasonable to understand that their sentencing will be deferred

18  pending the trial in this case, and those -- those defendants

19  are entitled to a timely disposition of their case without

20  unreasonable periods of time associated with a defense

21  strategy.

22       It is also my observation, and perhaps this is

23  unfounded or unreasonable, and if so, I apologize in advance,

24  but it is my observation that were the defendant now detained

25  this case would be moving to trial without motions to continue.

1          Is there anything else that requires the Court's

2    attention?

3          MR. ANDERSON:  Judge, there was one motion that we

4    haven't addressed.  It is concerning coconspirator

5    statements --

6          THE COURT:  Oh, yes, thank you.

7          MR. ANDERSON:  -- and Bruton.  There's not going to be

8    any Bruton issues here.  The Court had previously ruled on

9    another James hearing-type motion.  The Government asserted law

10   of case as our response to the motion made by -- by Mr.

11   Jariwala.

12         THE COURT:  Yes.  Thank you for reminding me.  It is

13   my intent to deny that motion.  My experience with James

14   hearings has not been particularly positive.  It seems as

15   though we spend our time at the James hearing and also at trial

16   and it does not -- it is not particularly efficient.

17         Any other matters that I might have forgotten?  And we

18   will be entering an order -- a written order in this case.

19         MR. ANDERSON:  No, Your Honor.  Thank you.

20         MR. STEINBERG:  Does the Court --

21         THE COURT:  Mr. Steinberg.

22         MR. STEINBERG:  Does the Court require that the

23   coconspirator statements be denoted and provided to the defense

24   in advance of the trial so that at least we will know what

25   statements the Government intends to seek to introduce under

1    that exception?

2         THE COURT:  I -- I cannot recall precisely what falls

3    within the scope of the discovery order.

4         Mr. Anderson, what is your intent regarding that?  I

5    guess the --

6         MR. ANDERSON:  We will --

7         THE COURT:  -- the question is a summarization of the

8    statement from the Government.

9         MR. ANDERSON:  That is not required under your prior

10   discovery order of February 15th of 2013.  We have provided

11   either transcripts or recordings or reports of interviews of

12   all of the coconspirators in this matter.  In addition, there's

13   one other witness that will be testifying that may very well

14   give us testimony that would qualify under the coconspirator

15   exception.

16        But we have provided by way of discovery all of the

17   statements or the substance of the statements to the defense.

18   They're easily ascertainable from those reports.  They will be

19   statements that have been made by Mr. Trevino, Mr. Rodriguez,

20   Brenda Guerrero is the other party that comes to mind that may

21   have some coconspirator-type statement testimony in this

22   particular matter, Judge.

23        THE COURT:  Have the transcripts of the change of plea

24   pleadings been provided?

25        MR. ANDERSON:  We have -- we did not order those up

1    from the court reporter, Your Honor.  We certainly -- we have

2    not ordered those up, Judge, no.

3           THE COURT:  All right.

4           MR. STEINBERG:  Judge, my concern is, again, here we

5    go, oh, it is all in the discovery.  The point is this Court is

6    required under the law to make findings before the introduction

7    of statements at some point in time.  They don't just come in.

8    The Court has to make a finding.  But the easiest way to do

9    that is at least tell both the Court and the defense, here are

10   the statements that we're seeking to introduce under this

11   exception so we know what they are and be specific about them

12   because to say, well, we're going to seek to introduce

13   everything is disingenuous at best so one would think if not

14   for the defense convenience but for the convenience of the

15   Court so the Court can make the appropriate findings, as it is

16   required to do under the case law, that we identify the

17   statements.

18          MR. ANDERSON:  We will certainly identify any of those

19   types of -- well, those type of statements, again, are readily

20   identifiable.  We are -- we understand the foundation

21   necessary, and we will provide that foundation.  We may be

22   offering some statements provisionally, but, Judge, we

23   understand what 801 requires.  We have provided to the defense

24   the sum and substance of coconspirator statements.

25          There are just a few.  There are not many.  Again, we

1  think that we have satisfied our obligation per your court

2  order in addition to existing law.

3       THE COURT:  Well, it is not my inclination to require

4  the Government to make essentially a written James submission.

5  I certainly know, as the attorneys do, what the admissibility

6  standard is.  To the extent that there are statements that the

7  defense believes are inadmissible hearsay and do not fall under

8  the coconspirator statement exclusion from hearsay, the

9  defendant counsel may object at the time those statements are

10  sought to be elicited from the witness, and we can handle it in

11  that fashion.

12       In the past we have handled it by -- by conditional

13  admission and then a later determination that the elements

14  either have or have not been made with a limiting instruction,

15  if need be.

16       Anything further?

17       MR. ANDERSON:  Not on behalf of the United States.

18  Thanks, Judge.

19       MR. STEINBERG:  No, thanks.

20       THE COURT:  Thank you.  I appreciate your time today.

21  Thank you, gentlemen.

22       If you have any questions about the technology, please

23  contact Abby and she will make herself available.  As long as

24  I'm not in this courtroom, you can come in.  And certainly the

25  U.S. Attorney's Office is very proficient, but if the defense

1   team needs access to the courtroom to gain a level of

2   familiarity and comfort with the use of the technology by the

3   attorneys or by witnesses, feel free to catch Abby and she will

4   walk through that with you and you can experiment with the

5   smart screens and gain a level of comfort.

6          We will be doing an overview the day of trial as to

7   the Court's practices.  There's nothing really surprising

8   concerning the Court's practices.  Sometimes there are

9   questions about where attorneys stand and the small podium and

10  the big podium and all that.  I would -- probably the most

11  repeated comment by jurors made in -- following trials, both

12  civil and criminal, is that jurors have a hard time hearing

13  witnesses and the attorneys themselves, and so I will use this

14  brief time now to just remind counsel to be conscientious about

15  where you are in relation to the microphone because these are

16  significant -- trials are significant and it is usually

17  problematic if the impaneled jury can't hear the attorney or

18  the witness.

19         And so, again, feel free to talk to Abby about the

20  technology, about any questions that you have, about matters

21  that surface during your experience as trial lawyers because

22  she sits through all of those final pretrial conferences and

23  sort of has a -- she has a -- she's better than I am in terms

24  of remembering what needs to be covered.

25         MR. ANDERSON:  Couple of questions, Judge.  9:00 to

1   5:00 will be the court hours for the trial or 8:30 to 5:00?

2        THE COURT:  It may be 8:30 because Mr. Jariwala is not

3   detained.  Frequently we make it 9:00 in order to get the jury

4   in and transport people that are detained.  I guess I would be

5   happy to hear input on the court hours for the trial in this

6   case, if you have any preference.

7        The morning time, whether it is 8:00 to 8:30 or 8:00

8   to 9:00 during the course of trial is reserved for attorneys to

9   come in.  You don't need an appointment if you have issues.  If

10  you anticipate a problem with a witness or a fight over

11  documents, I like to hear about those before trial starts or

12  during the noon recess or whatever.

13       Any preference on your part in terms of the time of

14  trial?  And the first -- the first day we won't begin that

15  until 10:00, but the attorneys are asked to report at 8:00.

16       MR. ANDERSON:  I take it, then, the Court -- you have

17  anticipated my next question.  If we file motions in limine, I

18  take it we would take them up the morning that trial commences?

19       THE COURT:  Yes.

20       MR. ANDERSON:  And in regards to hours, Judge, I have

21  never done this, and I have not talked with anyone on my team

22  about this, but I'm going to throw it out for consideration.

23  The courtroom deputy is looking at me like uh-oh.  I was going

24  to suggest, Judge, that the Court consider an 8:00 to 2:00, a

25  break maybe at 10:00, 10:30 and maybe another break at 12:00,

1    12:30 and go straight through, then we have three hours in the

2    afternoon to prepare for the next day.  I throw that out only

3    as a suggestion.  I have never tried that.  I heard that those

4    type of hours were being maintained by a court in another

5    district and the attorneys seemed to like it pretty well.

6            I don't know what it would be like here where we have

7    jurors coming from Wheatland and or Torrington.  Perhaps that

8    is not practical.

9            THE COURT:  Well, I, too, have heard those

10   recommendations at judge conferences.  I came back and talked

11   to chambers staff and the courtroom deputy about that and the

12   conclusion was that that would significantly shorten our trial

13   time because I'm very conscientious about keeping the trial

14   going and not exceeding the time given for breaks so I have

15   more on-bench time than under the old system.

16           So we talked about that and basically abandoned it

17   concluding that it would unnecessarily limit the trial time.

18           MR. ANDERSON:  I threw it out as a mere suggestion,

19   Judge.  I'm certainly not -- you tell us when to be here, we

20   will be here.

21           THE COURT:  Well, that first day I don't mean to catch

22   anyone flat-footed by talking about trial matters today.  I

23   appreciate your bringing the trial days up.  But we can address

24   that on that first day when we will have a couple days while

25   the venire is oriented and gets into the courtroom.

1          I am anticipating calling many more prospective jurors

2     because of the potential that jurors have read or heard

3     something about this case that jurors might represent would be

4     hard to put out of their mind.  And so I think we have more of

5     a potential for problems in that area.

6          Anything else?

7          MR. STEINBERG:  Just want to say for the record in

8     response to the Court's colloquy, the motion would have been

9     made regardless of Mr. Jariwala's status, had he been detained

10    or not, so I want that to be absolutely clear.  Thank you.

11         THE COURT:  Anything further?

12         MR. ANDERSON:  Not on behalf of the United States.

13         THE COURT:  Mr. Steinberg.

14         MR. STEINBERG:  No.

15         THE COURT:  Thank you.  Thank you again for your time

16    this morning.  We will stand in recess until call.

17         (Proceedings concluded 9:50 a.m., April 29, 2013.)

18

19

20

21

22

23

24

25

12-CR-216-F

1                    C E R T I F I C A T E

2

3

4

5          I, JANET DAVIS, Federal Official Court Reporter for

6   the United States District Court for the District of Wyoming, a

7   Registered Merit Reporter and Federal Certified Realtime

8   Reporter, do hereby certify that I reported by machine

9   shorthand the foregoing proceedings contained herein on the

10  aforementioned subject on the date herein set forth, and that

11  the foregoing pages constitute a full, true and correct

12  transcript.

13

14          Dated this 28th day of October, 2013.

15

16

17

18                              /s/ Janet Davis

19          _____

20                  JANET DAVIS
                United States Court Reporter
21              Registered Merit Reporter
            Federal Certified Realtime Reporter
22

23

24

25